# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ADAMS OUTDOOR ADVERTISING L.P., a
Minnesota Limited Partnership,

                    Plaintiff,

     vs.

RPM REALTY COMPANY, a Pennsylvania
General Partnership,

          and

RAY PRICE MOTORS CO., a Pennsylvania
General Partnership,

          and

RAY PRICE AUTOMOTIVE GROUP,

          and

RAYMOND PRICE, III, individually, d/b/a the
owner/partner/manager of RPM REALTY
COMPANY, a registered fictitious name, and
d/b/a the owner/manager/partner of RAY
PRICE MOTORS CO., a registered fictitious
name, and d/b/a the owner/manager/partner of
RAY PRICE AUTOMOTIVE GROUP, in both
his official and individual/personal capacities,

          and

RAY PRICE FORD SALES, INC.,

          and

RAY PRICE FORD, INC.,

          and

RAY PRICE MOTORS IMPORTS, INC.,

          and

No. 3:19-cv-00366-MEM

**AMENDED
COMPLAINT**

RAY PRICE MOTORS, INC.

and

RAY PRICE CHEVROLET, INC.

and

RAY PRICE MOUNT POCONO MOTORS, INC.,

Defendants.

Plaintiff, Adams Outdoor Advertising Limited Partnership, by and through its attorney, James L. Pfeiffer, Esq., of the law firm of Pfeiffer & Bruno, P.C., hereby files its Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) ("Amending as a Matter of Course"), and in support thereof states as follows:

## PARTIES

1.      Plaintiff Adams Outdoor Advertising Limited Partnership (hereinafter "Adams") is a limited partnership organized under the laws of the State of Minnesota with corporate offices at located at 500 Colonial Parkway, Suite 120, Roswell, GA.  None of the partners of Adams are residents of the Commonwealth of Pennsylvania.

2.      Defendant RPM Realty Company (hereinafter the "RPM") is a registered fictitious name and is a general partnership organized under the laws of the Commonwealth of Pennsylvania with corporate offices located at 353 Main Street, Stroudsburg, PA 18360.  Based on information and belief, none of its partners are residents of the State of Minnesota.

3.      Defendant Ray Price Motors Co. is a registered fictitious name and is a general partnership organized under the laws of the Commonwealth of Pennsylvania with corporate offices located at 353 Main Street, Stroudsburg, PA 18360.  Based on information and belief,

2

none of its partners are residents of the State of Minnesota.

4.      Ray Price Automotive Group is a fictitious name used by Defendant Raymond Price, III, located at 6310 Route 209, Stroudsburg, PA 18360. Based on information and belief, none of its owners or officers are residents of the State of Minnesota.

5.      Defendant Raymond Price, III, individually, does business in Monroe County, Pennsylvania using the fictitious name of "RPM Realty Company", as the owner/manager/partner of RPM Realty Company, and is a resident of the Commonwealth of Pennsylvania. He is sued in both his individual/personal capacity, and in his official capacity as owner/manager/partner of RPM Realty Company.

6.      Defendant Raymond Price, III, individually, does business in Monroe County, Pennsylvania using the fictitious name of "Ray Price Motors Co.", as the owner/manager/partner of Ray Price Motors Co., and is a resident of the Commonwealth of Pennsylvania. He is sued in both his individual/personal capacity, and in his official capacity as owner/manager/partner of Ray Price Motors Co.

7.      Defendant Raymond Price, III, individually, does business in Monroe County, Pennsylvania using the fictitious name of "Ray Price Automotive Group", as the owner/manager/partner of Ray Price Automotive Group, and is a resident of the Commonwealth of Pennsylvania. He is sued in both his individual/personal capacity, and in his official capacity as owner/manager/partner of Ray Price Automotive Group.

8.      Defendant Ray Price Ford Sales, Inc. is a corporation formed under the laws of the Commonwealth of Pennsylvania with corporate headquarters addressed at 301 N. 9th Street, Stroudsburg, PA 18360, from where its officers direct and control its business activities.

9.      Defendant Ray Price Ford, Inc. is a corporation formed under the laws of the

Commonwealth of Pennsylvania with corporate headquarters addressed at 410 Analomink Rd., East Stroudsburg, PA 18301, from where its officers direct and control its business activities.

10.     Defendant Ray Price Motors Imports, Inc. is a corporation formed under the laws of the Commonwealth of Pennsylvania with corporate headquarters addressed at 505 Fawn Rd., East Stroudsburg, PA 18301-8571, from where its officers direct and control its corporate activities.

11.     Defendant Ray Price Motors, Inc. is a corporation formed under the laws of the Commonwealth of Pennsylvania with corporate headquarters addressed at 6310 Business Route 209, Stroudsburg, PA 18360, from where its officers direct and control its corporate activities.

12.     Defendant Ray Price Chevrolet, Inc. is a corporation formed under the laws of the Commonwealth of Pennsylvania with corporate headquarters addressed at 2969 PA-940, Mt. Pocono, PA 18344, from where its officers direct and control its corporate activities.

13.     Defendant Ray Price Mt. Pocono Motors, Inc. is a corporation formed under the laws of the Commonwealth of Pennsylvania with corporate headquarters addressed at 6310 Business Route 209, Stroudsburg, PA 18360, from where its officers direct and control its corporate activities.

14.     The businesses named in paragraphs 3 and 6 through 13 inclusive are collectively known as the Ray Price entities and affiliates.

### JURISDICTION & VENUE

15.     This Court has jurisdiction over this matter by reason of the diversity of citizenship between Defendants and Plaintiff – a Minnesota Limited Partnership with no partners/members who are resident in the Commonwealth of Pennsylvania - and the matter in controversy exceeding the sum of $75,000.00, exclusive of interest and costs pursuant to 28

U.S.C. § 1332(a). The Court has supplemental jurisdiction over the Pennsylvania state law Replevin and Conversion claims pursuant to 28 U.S.C. § 1367(a) as it is so related to the claims in the action within such original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

16.     This Court has jurisdiction over the parties and venue is proper in this Court pursuant to 28 U.S.C. §1391 in that:

       a.     Defendants have as their office(s) or principal places of business in this District; and

       b.     The individually-named Defendant Raymond Price, III is a resident of the Commonwealth of Pennsylvania in which this District is located; and

       c.     The transactions and occurrences giving rise to the cause of action in this Complaint occurred within this District.

<u>**COUNT I**</u>

<u>**BREACH OF SETTLEMENT CONTRACT**</u>

17.     Adams is in the business of leasing and purchasing off-premise signs (billboards).

18.     Adams owns a billboard/structure, Site #2020, located on an elevated triangle of ridge located between the split of two limited access highways, PA-33 and U.S.-209, in Snydersville, Hamilton Township, Monroe County, Pennsylvania, on the east side of PA-33 and the north side of the U.S.-209 South bypass on land that is currently owned by Defendants. The billboard/structure is a 14' by 48' single face structure measuring 48 feet in length.

19.     The billboard/structure is open and obvious and has an "Adams" name-plate/logo on it identifying the billboard/structure as the property of Plaintiff.

5

20.     Adams had a valid and enforceable lease to use the land for this existing billboard/structure it owns through February 28, 2019.

21.     The Lease commenced on March 1, 2007 and by its express terms automatically renewed for successive like—i.e., two year—terms since that date. It automatically extended on March 1, 2009, March 1, 2011, March 1, 2013, March 1, 2015, and March 1, 2017 and remained in full force and effect under the Lease terms through March 1, 2019.

22.     The most recent lease term ran from March 1, 2017 to March 1, 2019. There is no provision in the Lease that would allow the Lessor to terminate the Lease during this term. The only termination right reserved to the Lessor is the right to terminate the next successive term, which would begin on March 1, 2019, and which the Lessor can only do by giving notice of termination at least ninety (90) days in advance of March 1, 2019.

23.     There is also no right of forfeiture of the billboard/structure to the Lessor in the Lease.

24.     Defendants currently own the land upon which the billboard/structure is located, having purchased the land on or about May 2016.

25.     Prior to Defendants' ownership of the land, the previous owners never disavowed the Lease or gave notice of termination of the Lease to Adams, and the Lease continued in full force and effect by its own terms when Defendants purchased the land.

26.     Prior to the automatic renewal of the Lease under its express terms in March 1, 2017, Defendants never terminated the Lease or gave any notice of intent to terminate the Lease.

27.     From May 2016 until January 2018, Defendants never disavowed the Lease or gave notice of termination to Adams.

6

28.     Adams has continued to pay rent under the Lease to Defendants, who have retained the rent checks, and Adams continued to enjoy its rights under the Lease throughout 2016, 2017 and 2018, utilizing its billboard/structure in accordance with the Lease terms.

29.     In January 2018, Defendants for the first time began disputing the validity and enforceability of Adams's Lease.

30.     Defendant Raymond Price, III referred Adams to his counsel, identifying and providing the contact information for Alan Price Young, Esquire as his authorized representative.

31.     On April 10, 2018, Alan Price Young, Esq. contacted Vice President and General Counsel for Adams, Richard J. Zecchino, Esq., and affirmatively represented that he is "counsel for RPM Realty Company and its manager/partner, Raymond Price III" authorized to "resolve all outstanding issues promptly concerning the billboard in Snydersville, Pennsylvania." See attached Exhibit "A".

32.     Based on Attorney Young's representation, Attorney Zecchino began negotiating with Attorney Young a resolution of the parties' dispute. See attached Exhibit "A".

33.     On September 6, 2018, Adams, by and through its corporate counsel, made an offer to resolve the dispute over the billboard/structure. See attached Exhibit "A".

34.     On December 5, 2018, Attorney Young again wrote to Adams' corporate counsel that "RPM has asked me to resolve all the pending Adams Outdoor billboard issues for the site" and stated "[b]ased on your September 6 message below, my goal is to discuss and resolve these issues with you this calendar year." See attached Exhibit "A".

35.     On December 6, 2018, the parties, by and through their attorneys Alan Price Young, Esq. on behalf of Defendants, and Richard J. Zecchino, Esq., Vice President and

General Counsel on behalf of Adams, negotiated a settlement of the parties' dispute by phone and agreed to the terms of that settlement. See attached Exhibit "A".

36.     Alan Price Young, Esq., on behalf of Defendants, contemporaneously reduced the parties' agreement to writing in an email to Attorney Zecchino that very day of their phone conversation, December 6, 2018. See attached Exhibit "A".

37.     Attorney Price, on behalf of Defendants, stated that agreement in writing as follows:

"This email confirms our phone conference, and your company's agreement to resolve the pending billboard matters as follows.

- The Ray Price entities and affiliates commit to purchase $12,000 per month in digital/static advertising from Adams for the 18 months beginning 1/1/2019.

- Adams will transfer ownership and title to the billboard structure and all sign permits that come with it to RPM Realty Company, a Pennsylvania general partnership on or before 1/1/2019.

- RPM Realty Company and the Ray Price entities and affiliates will use the billboard exclusively for their respective businesses for a minimum of 6 months per calendar year. RPM Realty Company will allow third-party use of the billboard for a maximum of 6 months per calendar year. These two restrictions will sunset on 1/1/2024.

- Danielle Singer, CFO for the Ray Price entities, will calculate and submit for your review the amounts still due from Adams Outdoor to RPM Realty Company for (1) uncashed rental checks on the transferred billboard accrued from May 1, 2016 to 1/1/2019; and (2) for unpaid rent due from AOA to RPM

8

Realty Company for the billboard previously removed from the Ford-Lincoln store construction site (approx. 1.5 years before to its removal).   We estimate the total is $30,000-$35,000.

Thanks in advance for your company's continued cooperation to complete this matter timely."

See attached Exhibit "A".

38.     Within the hour, Attorney Zecchino, on behalf of Adams, clarified by email to Attorney Young two points of the agreement reached between the parties that day, stating that:

"•     Violation of the restrictions in your bullet-point #3, will result in ownership of the billboard reverting to Adams.

•     We are doing our own calculation of back rent.  The hope is that the numbers match.  If they don't, we will have to have further conversations about resolution of this issue."

See attached Exhibit "A".

39.     Minutes later, by email, Attorney Young, on behalf of Defendants, agreed in writing: "Thanks, Richard.  We will get our rent numbers together."  See attached Exhibit "A".

40.     On December 7, 2018, Attorney Zecchino, on behalf of Defendants, provided to Attorney Young Adams' back rent calculation in the total amount of $28,845.32.  See attached Exhibit "A".

41.     On December 11, 2018, Attorney Young, on behalf of Defendants, confirmed in writing "your rent numbers are correct, *so it looks like we are good to go."*  See attached Exhibit "A".

42.     On December 11, 2018, Attorney Young, on behalf of Defendants,  requested

9

Adams' counsel begin preparing the necessary documents to effectuate their written agreement of December 6, 2018, stating "I would like to pull the transfer documentation together with your help and, and, [sic.] as discussed, have it effective as of the first day of the new year." See attached Exhibit "A".

43.    On December 11, 2018, Attorney Young, on behalf of Defendants, requested that Attorney Zecchino prepare the quitclaim deed into RPM Realty Company for the board structure and an assignment of all existing permits to the Company to effectuate the parties 'written agreement of December 6, 2018. See attached Exhibit "A".

44.    On December 11, 2018, Attorney Young, on behalf of Defendants, requested that Adams "initiate any notice process" to Adams' current customers using the billboard – i.e., advertisers on the existing board – necessary to effectuate the parties written agreement of December 6, 2018. See attached Exhibit "A".

45.    Thereafter, on December 18, 2018, less than two weeks before the parties' written agreement of December 6, 2018 was to be performed, Attorney Young, on behalf of Defendants, wrote as follows:

"I write to say that I have no authority to resolve the pending AOA billboard matter with RPM Realty Company in the manner that we have been negotiating for our respective clients. I am directed instead to confirm on behalf of RPM Realty Company that I gave you, as counsel for AOA, formal notice of lease termination by email dated April 10, 2018, meaning any enforceable lease for the sign would end and not renew. I reconfirm that April 2018 notice of termination again in this email intending that the lease end and not renew. Therefore, the lease for the sign ends by its own terms on March 19, 2019.

10

Please advise what AOA's intentions are for the sign structure and all related permits at the end of the lease term."

See attached Exhibit "A".

46.     Defendants' repudiation of the contract into which it entered, on terms to which the parties agreed and reduced to writing through their authorized representatives on December 6, 2018, as set forth and confirmed by Defendants' own attorney in writing that same day, is a definite and unconditional repudiation of the contract and an absolute and unequivocal refusal to perform.

47.     By letter dated December 27, 2018, Adams, by and through its undersigned local counsel, advised Defendants, by and through their counsel Alan Price Young, Esq., that "Adams Outdoor Advertising is ready, willing, and able to perform in conformance with its obligations on the contractually-specified date of January 1, 2019.  To wit, Adams Outdoor Advertising is prepared to transfer ownership and title to the billboard structure and all sign permits that come with it to RPM Realty Company on January 1, 2019, and to pay the agreed upon back rent amount of $28,845.32 to RPM Realty Company.  In exchange, your client has committed in writing to purchase $12,000.00 per month in digital/static advertising for the 18 months beginning 1/1/2019.  You client has also agreed to use the billboard exclusively for advertising RPM Realty Company and the Ray Price entities and affiliates for a minimum of 6 months per calendar year, and to allow third-party use of the billboard for a maximum of 6 months per calendar year, with these restrictions due to sunset (expire) on 01/01/2024, and any violation of which shall result in ownership of the billboard reverting to Adams." See attached Exhibit "B".

48.     Adams, by and through its undersigned local counsel, requested by the

11

December 27, 2018 letter that the parties schedule forthwith a time and location on January 1, 2019 for the parties to meet and consummate the transaction, and requested that Attorney Young confirm his client's intention to make its contractually-obligated payment to Adams in the amount of $12,000.00, on January 1, 2019, for advertising with Adams, and supply a time and location at which time Adams would perform its obligations as required by the parties' December 6, 2018 contract. See attached Exhibit "B".

49.    Defendants failed to make their contractually-obligated payment to Adams on January 1, 2019.

50.    Defendants failed to supply, discuss, or appear at a time and location for performance of the parties' contractual obligations on January 1, 2019.

51.    Since January 1, 2019, Defendants have failed to perform under the parties' contract to which they agreed and reduced to writing on December 6, 2018.

52.    On January 4, 2019, Attorney Young disputed the existence of a contract and Defendants' obligations thereunder and demanded instead that Adams remove its billboard and structure prior to March 1, 2019 contrary to the parties' December 6, 2018 agreement.

53.    On February 15, 2019, counsel for Adams wrote to counsel for Defendants with a proposal concerning the use of the subject billboard during the anticipated litigation, but received no response. See attached Exhibit "C".

54.    On February 28, 2019, after numerous messages from counsel for Adams were not returned, counsel for Adams wrote to counsel for Defendants with a second, alternate proposal for the continued use of the billboard during litigation. See attached Exhibit "D".

55.    In the February 28, 2019 letter, counsel for Adams made clear that if Defendants were not interested in either of Adams' proposals for the billboard, he needed to hear from

counsel for Defendants so that other arrangements for the billboard could be ironed out between the parties. See attached Exhibit "D".

56.     No response was received to the February 28, 2019 letter.

57.     The agreement of the parties to resolve a pending dispute reached by phone and reduced to writing on December 6, 2018 represents a valid and enforceable contract between the parties (hereinafter the "Settlement Contract"). See Exhibit "A".

58.     The Settlement Contract between the parties sets forth each party's rights and responsibilities to each other.

59.     Adams has at all times remained ready, willing and able to faithfully perform on all of its duties and obligations under the Settlement Contract, and is not in breach of the Settlement Contract.

60.     Commencing on January 1, 2019 and continuing thereafter, Defendants breached and remain in breach of the parties' Settlement Contract by failing to perform its obligations in accordance therewith, including but not limited to failing to pay to Adams the contractually-obligated amount of $12,000.00 per month for digital/static advertising.

61.     As a direct and proximate result of Defendants' breach of the Settlement Contract, Adams has suffered, and will continue to suffer, monetary injury and loss in the amount of $12,000.00 per month in digital/static advertising for the 18 months beginning 1/1/2019, for a total amount of $216,000.00, money Defendants have failed to and refuse to pay.

62.     Defendants also remain in possession of the Adams' billboard/structure despite demand having been made for its return, and have failed to communicate with Adams to allow Adams to access Defendants' land for purposes of allowing Adams to safely remove Adams'

13

billboard/structure.

63.    Defendants have denied Adams access to, and have withheld permission for Adams to access, Adams' billboard/structure.

64.    Adams does not, and has not, consented to Defendants' possession of Adams' billboard/structure.

65.    Defendants' continued possession of Adams' billboard/structure is both without Plaintiff's consent and without legal justification.

66.    Defendants' denial of access to and withholding of permission for Adams to enter Defendants land to access the billboard/structure is in violation of paragraph ¶1 of the Lease granting Adams an easement for reasonable access to Adams' structure. See Exhibit "E" (Lease Agreement).

67.    Defendants' denial of access to and withholding of permission for Adams to access the billboard/structure is in violation of paragraph ¶4 of the Lease, which states that "all structures erected by or for the Lessee or its predecessors-in-interest on the Property shall at all times be and remain the property of the Lessee and may be removed by the Lessee before or within a reasonable time of termination or expiration of this lease, notwithstanding that such Structures are intended by Lessor and lessee to be permanently affixed to the Property."  See Exhibit "E".

68.    Under ¶13 of the express terms of the Lease, Adams is entitled to attorney fees that have been and will be incurred in this litigation.  See Exhibit "E" attached.

WHEREFORE, Adams requests that this Honorable Court enter Judgment in its favor and against Defendants, individually and/or jointly, for breach of contract in an amount to be determined, together with interest, costs, and fees (including attorney fees), any and all further

or additional damages (including but not limited to exemplary, consequential, and/or punitive) that may be available as provided under applicable law, and such further relief as this Honorable Court deems equitable and just.

## COUNT II

## ANTICIPATORY BREACH OF CONTRACT

69.     Paragraphs 1 through 68 are incorporated herein as if fully set forth in this paragraph.

70.     The agreement of the parties to resolve a pending dispute reached by phone and reduced to writing on December 6, 2018 represents a valid and enforceable contract between the parties.

71.     The Settlement Contract between the parties sets forth each party's rights and responsibilities to each other.

72.     Adams has at all times remained ready, willing and able to faithfully perform on all of its duties and obligations under the Settlement Contract, and is not in breach of the Settlement Contract.

73.     Defendants' December 18, 2018 letter, by and through its authorized representative Alan Price Young, Esq., constitutes a definite and unconditional repudiation of the Settlement Contract and an absolute and unequivocal refusal to perform.

74.     Defendants' failure to perform by making the required, contractually-obligated payments to Adams of $12,000.00 per month commencing January 1, 2019 and continuing thereafter constitute additional, definite and unconditional repudiations of the Settlement Contract and absolute and unequivocal refusals to perform.

75.     Defendants January 4, 2019 letter, by and through its authorized representative

Alan Price Young, Esq., constitutes an additional, definite and unconditional repudiation of the Settlement Contract and an absolute and unequivocal refusal to perform.

76.     Collectively, Defendants' communications and actions concerning the Settlement Contract since December 18, 2019, as set forth above, represent a definite and unconditional repudiation of the Settlement Contract and an absolute and unequivocal refusal to perform.

77.     As such, Defendants have committed an anticipatory breach of the Settlement Contract.

78.     As a direct and proximate result of Defendants' anticipatory breach of the Settlement Contract, Adams has suffered, will suffer in the future, and will continue to suffer damages in excess of $216,000.00.

WHEREFORE, Plaintiff requests that this Honorable Court enter Judgment in its favor and against Defendants, individually and/or jointly, for anticipatory breach of contract in an amount to be determined, together with interest, costs, and fees (including attorney fees), any and all further or additional damages (including but not limited to exemplary, consequential, and/or punitive) that may be available as provided under applicable law, and such further relief as this Honorable Court deems equitable and just.

## COUNT III

## REPLEVIN

79.     Paragraphs 1 through 78 are incorporated herein as if fully set forth in this paragraph.

80.     Plaintiff is the lawful owner of a billboard/structure, Site #2020, bearing an "Adams" name plate/logo, located on an elevated triangle of ridge located between the split of

two limited access highways, PA-33 and U.S.-209, in Snydersville, Hamilton Township, Monroe County, Pennsylvania, on the east side of PA-33 and the north side of the U.S.-209 South bypass, on land that is currently owned by Defendants.  The billboard/structure is a 14' by 48' single face structure measuring 48 feet in length.

81.    Defendants have no right of possession of the billboard/structure and in fact on January 4, 2019 demanded that Plaintiff remove it upon expiration of the Lease Agreement between the parties, thereby acknowledging same.

82.    There is also no right of forfeiture for the Lessor in the Lease, and Plaintiff's exclusive right to immediate possession of the property as its lawful owner is indisputable under the facts as set forth and here incorporated.

83.    Plaintiff, by and through its counsel, made numerous attempts both in writing and by phone to arrange for the removal of its billboard/structure from Defendants' property to no avail.

84.    Defendants have withheld from Plaintiff permission to access Defendants' property for purposes of removing the billboard/structure and have failed to respond to Plaintiff's written requests and messages seeking to arrange said access and safe dismantling of the structure.

85.    Defendants are in unlawful possession of Plaintiff's property, without Plaintiff's consent and without legal justification, and have been since March 1, 2019.

WHEREFORE, Plaintiff requests that this Honorable Court enter Judgment in its favor and against Defendants RPM Realty Company and Raymond Price, III d/b/a RPM Realty Company, individually and/or jointly, for the claim in replevin and award damages in an amount to be determined, together with interest, costs, and fees (including attorney fees), any

and all further or additional damages (including but not limited to exemplary, consequential, and/or punitive) that may be available as provided under applicable law, and such further relief as this Honorable Court deems equitable and just, including but not limited to recovery of the subject property.

## COUNT IV

## CONVERSION

86.     Paragraphs 1 through 85 are incorporated herein as if fully set forth in this paragraph.

87.     Defendants are in unlawful possession of Plaintiff's property, without Plaintiff's consent, and have been since March 1, 2019.

88.     Defendants' continued unlawful possession of Plaintiff's billboard/structure, and their withholding of access to it to allow Plaintiff to safely recover the property, deprives Plaintiff of its use and possession of its property, and interferes therewith, without Plaintiff's consent and without legal justification.

89.     Defendants' intent to exercise dominion or control over the billboard/structure is in fact inconsistent with Plaintiff's exclusive ownership rights.

90.     Demand has been made, via the aforementioned communications, for access to Defendants' land for purposes of Plaintiff's recovery of its billboard/structure; however, Defendants have refused to arrange such access, have failed to communicate with Plaintiff, and have unlawfully withheld the billboard/structure from Plaintiff.

WHEREFORE, Plaintiff requests that this Honorable Court enter Judgment in its favor and against Defendants RPM Realty Company and Raymond Price III d/b/a RPM Realty Company, individually and/or jointly, for conversion damages in an amount to be determined,

together with interest, costs, and fees (including attorney fees), any and all further or additional damages (including but not limited to exemplary, consequential, and/or punitive) that may be available as provided under applicable law, and such further relief as this Honorable Court deems equitable and just, including but not limited to recovery of the subject property.

**COUNT V**

**BREACH OF MEDIA DISPLAY CONTRACT**

91.     Paragraphs 1 through 90 are incorporated herein as if fully set forth in this paragraph.

92.     On September 6, 2018, Ray Price Automotive Group entered into a "Media Display Contract" with Plaintiff to advertise on Plaintiff's billboard located at 2012 SR 33/US 209 0.65 miles south of SR 2010 (Manor Drive) WS at a net rate of $2,000.00 per cycle for thirteen cycles over 52 weeks, or a total of $26,000.00 contract amount.  The contract is attached hereto as Exhibit "F".

93.     The Media Display Contract was to commence with the first advertising posting on October 8, 2018 and to continue for thirteen cycles through final advertising posted September 2, 2019.  See Exhibit "F".

94.     Defendant Ray Price Automotive Group agreed to pay the full invoiced amount not later than thirty (30) days following the billing date.  See Exhibit "F".

95.     Plaintiff has continually and faithfully performed under the Media Display Contract by displaying Defendant's advertising on Plaintiff's billboard structure since October 2018.

96.     The last payment made by Defendant Ray Price Automotive Group under the Media Display Contract was made on January 8, 2019 for the December 31, 2018 invoice in the

amount of $2,000.00.

97.     Defendant Ray Price Automotive Group has enjoyed the benefit of advertising on Plaintiff's billboard under the Media Display Contract without paying for same for over sixth months, in violation of the parties' contract.

98.     No payments have been made by Defendant Ray Price Automotive Group on the January, February, March, April, May, June and July invoices, for a total amount owing under the contract of $14,000.00.

99.     Defendant Ray Price Automotive Group agreed that any amounts not paid within thirty (30) days following the billing date are subject to a late fee of 1.5% per month. See Exhibit "F".

100.    Defendant Ray Price Automotive Group agreed that all payments in arrears shall bear interest at the highest rate permitted by law.  See Exhibit "F".

101.    Defendant Ray Price Automotive Group agreed that in the event of default it will pay, in addition to the other amounts required under the contract, either reasonable collection fees or reasonable attorney's fees as provided by law.

102.    Additionally, the Media Display Contract entered into by Ray Price Automotive Group and Plaintiff on September 6, 2018 represents a valid and enforceable contract between the parties (hereinafter the "Media Display Contract").  See Exhibit "F".

103.    The Media Display Contract between the parties sets forth each party's rights and responsibilities to each other.

104.    Adams has at all times faithfully performed on all of its duties and obligations under the Media Display Contract by displaying advertising of Defendant Ray Price Automotive Group in accordance with the terms therein.

105.   Commencing in January 2019 and continuing thereafter, Defendant Ray Price Automotive Group has breached and remains in breach of the parties' Media Display Contract by failing to perform its obligations in accordance therewith, including but not limited to failing to pay to Adams the contractually-obligated amount of $14,000.00 per month for advertising ($2,000.00 per cycle for seven consecutive cycles from January through July 2019).

106.   As a direct and proximate result of Defendants' breach of the Media Display Contract, Adams has suffered monetary injury and loss in the amount of $14,000.00, plus late fees and interest as provided for under the Media Display Contract.

WHEREFORE, Adams requests that this Honorable Court enter Judgment in its favor and against Defendants, individually and/or jointly, for breach of contract in an amount to be determined, together with interest, costs, and fees (including attorney fees), any and all further or additional damages (including but not limited to exemplary, consequential, and/or punitive) that may be available as provided under applicable law, and such further relief as this Honorable Court deems equitable and just.

## COUNT IV

## DECLARATORY JUDGMENT

107.   Paragraphs 1 through 106 are incorporated herein as if fully set forth in this paragraph.

108.   An actual case or controversy exists between the parties concerning their respective rights and obligations under both the Settlement Contract and the Media Display Contract.

109.   Accordingly, Adams hereby seeks a declaratory judgment declaring the parties' respective rights and obligations under the Settlement Contract and under the Media Display

Contract.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court issue a declaratory judgment declaring the parties' respective rights and duties under the Settlement Contract and the Media Display Contract, and declaring that:

(a) Defendants, individually and/or jointly, are obligated to perform under the terms to which they agreed, through their authorized representative and attorney, in writing, on December 6, 2018, and awarding Plaintiff such further relief as this Court deems equitable, just, and/or proper; and

(b) Defendant Ray Price Automotive Group is and was obligated to perform under the terms to which it agreed in the Media Display Contract signed September 6, 2018, and awarding Plaintiff such further relief as this Court deems equitable, just, and/or proper.

## DESIGNATION OF TRIAL COUNSEL

The undersigned is hereby designated as trial counsel in this matter.

PFEIFFER & BRUNO, P.C.

BY: _____
JAMES L. PFEIFFER, ESQ., I.D. #47268
Attorney for Plaintiff
44 N. 2nd Street – P.O. Box 468
Easton, PA 18044-0468
610-258-4003 (o)
610-258-1943 (f)

Dated:  August 27, 2019

22

## CERTIFICATE OF SERVICE

I, James L. Pfeiffer, Esq., counsel for Plaintiff in the within action, do hereby certify that Plaintiff's Amended Complaint, with accompanying exhibits, were served and are available for download and viewing via the Eastern District of Pennsylvania Electronic Case Filing System on this  27th   day of August, 2019, upon all counsel for the parties.

PFEIFFER & BRUNO, P.C.

By: _____
James L. Pfeiffer, Esq.
PA I.D. #47268
44 North Second Street
P.O. Box 468
Easton, PA 18044
(610) 258-4003
Attorney for Plaintiff

Dated:  August 27, 2019

23