**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**ADAMS OUTDOOR ADVERTISING :**
**L.P.,**

                        **:**

       **Plaintiff,**            **CIVIL ACTION NO. 3:19-0366**

                        **:**

       **v.**

                        **:**     **(JUDGE MANNION)**

**RPM REALTY COMPANY,** *et. al.,*

                        **:**

       **Defendants.**

## <u>MEMORANDUM</u>

On March 1, 2019, plaintiff Adams Outdoor Advertising, ("Plaintiff" or "Adams Outdoor"), filed a complaint in this District, (Doc. 1), against numerous defendants, including RPM Realty Co. and Raymond Price III.[1] Plaintiff thereafter amended its complaint against the Defendants asserting claims for breach of settlement contract (Count I), anticipatory breach of contract (Count II), replevin (Count III), conversion (Count IV); breach of media display contract (Count V); and declaratory judgment (Count IV). (Doc. 19).

---

[1] The remaining defendants include: RPM Realty Co., Ray Price Motors Co., Ray Price Automotive Group, Raymond Price III, Ray Price Ford Sales, Inc., Ray Price Ford, Inc., Ray Price Motors Imports, Inc., Ray Price Motors, Inc., Ray Price Chevrolet, Inc., and Ray Price Mount Pocono Motors, Inc., (collectively, the "Defendants"). (Doc 19).

Pending before the Court is a motion for partial summary judgment filed by the Plaintiff, who seeks judgment in its favor as to the Plaintiff's claims for breach of settlement contract and anticipatory breach of contract. (Doc. 30). Viewing the evidence in a light most favorable to the non-moving party, the Plaintiff's motion for partial summary judgment as to Counts I and II of its amended complaint will be **DENIED**.

## I.    BACKGROUND

Plaintiff is a limited partnership operating in Pennsylvania that purchases and leases billboards. (Doc. 1 at ¶¶ 1, 17). The Plaintiff alleges that it "owns" a billboard located in Monroe County, Pennsylvania on land owned by the Defendants, (the "Monroe Property"). (Id. at ¶¶ 18, 24). The Plaintiff, however, contends that it maintains a lease to utilize the land on which the billboard stands that commenced on March 1, 2007, and "automatically extended" every two years. (Id. at ¶ 21). At the time the Plaintiff filed its complaint, the "most recent lease term" allegedly extended "from March 1, 2017 to March 1, 2019." (Doc. at ¶ 22). The Plaintiff claims that the lease contained only one avenue through which the owner of the property could terminate the lease, which required that the owner "giv[e] notice of termination at least ninety (90) days in advance" of the next automatic renewal date. (Id. at 22).

Nevertheless, the Defendants state that defendant RPM Realty Co. purchased the Monroe Property on April 29, 2016, and that it neither entered

into a lease agreement with the Plaintiff nor received any compensation for the Plaintiff's use of the property. (Doc. 28 at 10). In early 2018, the Defendants started to question the Plaintiff's use of the billboard located on the Monroe Property, at which time the Plaintiff informed the Defendants that it would continue to operate the billboard as it maintained "a binding lease agreement to have the billboard structure on the property through February 28, 2019." (Doc. 30-3 at 27). After learning that the Plaintiff believed it held a valid lease, the Defendants referred the matter to their counsel to "help resolve all outstanding issues promptly concerning the billboard." (Doc. 30-3 at 18). Though the Defendants argued that no lease existed for the billboard on the Monroe Property, their counsel "notified [the Plaintiff's] attorney on April 10, 2018, that if a lease agreement was held to exist, it was terminating it effective by March 1, 2019." (Doc. 28 at 10); *see also* (Doc. 30-3 at 18-19) ("RPM Realty Company also gives formal notice of termination to AOA for any legally enforceable lease that may exist").

Throughout the fall of 2018, the parties' attorneys maintained open communication and proposed terms for a settlement "to resolve the pending billboard matters." (Doc. 30-3 at 5-12). In December 2018, the Plaintiff's counsel, in light of these discussions, requested that the Defendants' counsel "put together" an agreement that "outlines the terms upon which [counsel] ha[d] agreed" and a "standard media contract for the $12,000 a month." (Doc. 30-3 at 3). For the Plaintiff, these "terms" were allegedly clarified "in writing" by Defendants' counsel on December 6, 2018, and

confirmed as "good to go" several days later. (Doc. 36 at ¶ 21-27) (citing (Doc. 30-3 at 3, 6-7)). On December 18, 2018, however, the Defendants' counsel informed the Plaintiff that he had "no authority to resolve the pending AOA billboard matter with RPM Realty Company in the manner that [they] ha[d] been negotiating for [their] respective clients" and that the Defendants "reconfirm[ed] that April 2018 notice of termination … intending that the lease end and not renew." (Doc. 30-3 at 2).

The Plaintiff argues that the Defendants' counsel was operating on the Defendants' behalf as their counsel had informed the Plaintiff that "RPM ha[d] asked [him] to resolve all the pending Adams Outdoor billboard issues for the site." (Doc. 36 at ¶ 16). The Plaintiff further contends that defendant Raymond Price III, the owner of the RPM Realty Company, was copied on the email chain between the parties' counsel and failed to object to the supposed terms of an "agreement." (Doc. 36 at ¶ 15). Therefore, on December 27, 2018, the Plaintiff sent a letter to the Defendants claiming that they were "ready, willing, and able to perform in conformance with its obligations" set forth within the email communications between the parties. (Doc. 36 at ¶ 33). Nevertheless, the parties maintain opposing views regarding whether a contract existed.

## II.    STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file]

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp.836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not … to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); *see also* Celotex Corp., 477 U.S. at 325. If the

5

moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. <u>Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998)</u> (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)</u>). If, however, the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." <u>Celotex Corp., 477 U.S. at 322-23</u>; <u>Jakimas v. Hoffman-LaRoche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)</u>.

## III.   DISCUSSION

Federal courts exercising diversity jurisdiction must apply the substantive law of the state in which the dispute originates. <u>Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)</u>. Courts in this district sitting in diversity will thus apply Pennsylvania substantive law. <u>Angino v. Wells Fargo Bank, N.A., 666 F.App'x 204, 207 (3d Cir. 2016)</u> (citing <u>Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000)</u>). To state a claim for breach of contract under Pennsylvania law, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) the defendant's breach of duty imposed by the terms; and (3) actual loss or injury as a direct result of the

6

breach. *See* Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

In contrast, an anticipatory breach of a contract occurs "whenever there has been a definite and unconditional repudiation of a contract by one party communicated to another." JML Indus., Inc. v. Pretium Packaging, LLC, 2006 WL 3042973, at *4 (M.D. Pa. Oct. 25, 2006) (quoting Oak Ridge Const. Co. v. Tolley, 504 A.2d 1343, 1346 (Pa. Super. Ct. 1985)); *see also* Edwards v. Wyatt, 2005 WL 1349531, at *3 (3d Cir. June 8, 2005) (for a claim for anticipatory breach of contract, a plaintiff must show that the breaching party conveys "an absolute and unequivocal refusal to perform" under a contract or a "distinct and positive statement of an inability to do so"). As with a claim for breach of contract, however, a contract must exist in order for there to be a breach–even an anticipatory one. An analysis of the Plaintiff's motion, therefore, must first start with whether the Plaintiff has established that a contract existed.

The test for enforceability of a contract is whether both parties intended to be bound by the definitive terms of an agreement with appropriate consideration. ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 666 (3d Cir. 1998) (citing Channel Home Ctrs. v. Grossman, 795 F.2d 291, 298-99 (3d Cir. 1998)). Though often analyzed in terms of "offer" and "acceptance," courts applying Pennsylvania law for contract formation look to: "(1) whether both parties manifested an intention to be bound by the

7

agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." Id. (citing Channel Home Ctrs., 795 F.2d at 299); *see also* 1 Samuel Williston, A Treatise on the Law of Contracts §23, at 51 (Walter H.E. Jaeger, ed., 3d ed. 1957) (the decisive inquiry in contract formation is the "manifestation of assent of the parties to the terms of the promise and to the consideration for it").

In assessing intent, the object of inquiry is not the inner, subjective intent of the parties, but rather whether a reasonable person would apprehend that the parties intend to be bound in consideration of their behavior. Langer v. Capital One Auto Finance, 855 F.App'x 828, 832 (3d Cir. 2021) (citing Ingrassia Constr. Co. v. Walsh, 486 A.2d 478, 483 (Pa. Super. Ct. 1984)). Whether a party intended to enter into an agreement may be evinced through various forms, including a physical contract. Krizovensky v. Krizovensky, 624 A.2d 638, 642 (Pa. Super. Ct. 1993) (Pennsylvania contract law begins with the "firmly settled" principle that "the intent of the parties to a written contract is contained in the writing itself"). Nevertheless, though "[t]he presence or absence of a signed writing is relevant to that determination, [it] is not dispositive." Shell's Disposal and Recycling, Inc. v. City of Lancaster, 504 F.App'x. 194, 201 (3d Cir. 2012) (citing Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 584 (3d Cir. 2009)); *see* Ingrassia Constr. Co., Inc., 486 A.2d at 483 ("a true and actual meeting of the minds is not necessary to form a contract"). Instead, if the parties "have agreed to the essential terms of a contract, 'the fact that they intend to

formalize their agreement in writing but have not yet done so does not prevent enforcement of such agreement.'" Shell's Disposal and Recycling, Inc., 504 F.App'x. at 201 (quoting Mazzella v. Koken, 739 A.2d 531, 536 (Pa. 1999)); *see also* Goldman v. McShain, 247 A.2d 455, 459 (Pa. 1968) ("parties may bind themselves contractually although they intend, at some later date, to draft a more formal document"). Merely "engaging in negotiations, drafting preliminary documents, or agreeing 'to enter into a binding contract in the future,'" however, "does not create an enforceable contract 'because the parties themselves have not come to an agreement on the essential terms of the bargain and therefore there is nothing for the court to enforce.'" Shell's Disposal and Recycling, Inc., 504 F.App'x. at 201 (quoting Am. Eagle Outfitters, 584 F.3d at 582 (internal quotation marks omitted)); *see also* Channel Home Ctrs., 795 F.2d at 298 ("evidence of preliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract").

The parties clearly disagree about whether there was in fact an agreement between them, while the documentation either confirming or challenging that a contract exists is centered around an email chain between the parties and their legal counsel. (Doc. 30-3). As evidenced by this email chain, the Plaintiff argues that the representations made by the Defendants' counsel demonstrated an intent to enter into an agreement with established terms and obligations on the Defendants' behalf. (Doc. 40 at 6-7). In order for such a contract to exist, however, the Plaintiff must show that the

Defendants' counsel was given sufficient authority to execute a contract on the Defendants' behalf and manifest an intent for the Defendants to be bound by agreed upon terms.[2] *See* (Id. at 9).

Legal counsel for a party is able to take action on behalf of their clients where they maintain proper authority. *See* Restatement (Second) of Agency §12 ("[a]n agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself"). As established by Pennsylvania courts:

> [a]n agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. *See* Bolus v. United Penn Bank, 363 Pa.Super. 247, 525 A.2d 1215 (1987). Implied authority exists in

---

[2] In settlement negotiations, Pennsylvania courts have historically established that an agent may not enter into a settlement on behalf of its principal unless it maintains express authority to do so. Reutzel v. Douglas, 870 A.2d 787, 789-90 (Pa. 2005) (citing Rizzo v. Haines, 555 A.2d 58, 66 (Pa. 1989)); *but see* Tiernan v. Devoe, 923 F.2d 1024, 1035 (3d Cir. 1991) (stating that, based on its review of developing case law, Pennsylvania courts "might allow implied actual or apparent authority to suffice" for an agent to enter into a settlement agreement). The Plaintiff claims that the parties were not entering into a settlement agreement, but a "sales contract." (Doc. 40 at 10, n. 1); *but see* (Doc. 19 at 5) (amended complaint includes claim for "breach of settlement contract"). Though the Plaintiff's attorney stated that it "would like a settlement agreement put together that outlines the terms upon which [counsel] agreed" and part of the alleged agreement between the parties included back pay for missed rent payments, (Doc. 30-3 at 3), the Defendants do not raise the issue of whether the alleged agreement was a sales contract or settlement agreement in their opposition brief, and so the Court will not limit its analysis to whether express authority existed.

situations where the agent's actions are "proper, usual and necessary" to carry out express agency. *See* Passarelli v. Shields, 191 Pa.Super. 194, 156 A.2d 343 (1959). Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. *See* Turner Hydraulics v. Susquehanna Construction Co., 414 Pa.Super. 130, 606 A.2d 532 (1992). Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal. *See* Turnway Corp. v. Soffer, 461 Pa. 447, 336 A.2d 871 (1975).

Walter v. Johnson, 66 A.3d 782, 786 (Pa. Super. Ct. 2013); *see also* E. Broadtop Connecting R.R., Inc. v. Andarko Petroleum Corp., Inc., 266 A.3d 663 (Pa. Super. Ct. 2021) (citing V-Tech Servs., Inc. v. St., 72 A.3d 270, 278-79 (Pa. Super. Ct. 2013)) (citing same). Therefore, the existence of express and implied authority is the result of a direct authorization by a principal to its agent for the agent to act on the principal's behalf. In contrast, the existence of apparent authority or authority by estoppel is evidenced through a principal's manifestations to a third party that an agent has authority to act on the principal's behalf. The burden of establishing agency rests on the party asserting it. Basile v. H&R Block, 761 A.2d 1115, 1120 (Pa. 2000).

The Plaintiff, relying almost exclusively on a single email chain between the parties, asks this Court to infer that the Defendants' counsel was given the express authority to enter into a contract with the Plaintiff. (Doc. 40 at 5-6). In particular, the Plaintiff points to an email in which Defendants' counsel indicated that defendant "RPM ha[d] asked [him] to

resolve all the pending Adams Outdoor billboard issues for" the Monroe Property. (Doc. 30-2 at 8) (citing (Doc. 30-3 at 8)). The Plaintiff, however, has failed through such emails to support a finding that the Defendants "deliberately and specifically grant[ed] authority" to their counsel to enter into either a sales agreement or a settlement agreement on their behalf. Walter, 66 A.3d at 786; *see also* Pennsylvania Rest. and Lodging Assoc. v. City of Pittsburgh, 211 A.3d 810, 839 (Pa. 2019) (Saylor, J. concurring) ("express" authority taken to mean "specific, clear, unmistakable, and not left to inference or implication"). Though there are means through which a third party may establish that express authority was given, the Plaintiff's reliance upon an email chain between the two parties lacking any clear annunciation of authority given to Defendants' counsel is insufficient.[3] *See* Wisler v. Manor Care of Lancaster PA, LLC, 124 A.3d 317, 324 (Pa. Super. Ct. 2015) (quoting

---

[3] The Defendants contend that the Plaintiff's motion is untimely as it fails to account for any discovery beyond the parties' initial negotiations, which would likely add clarity to any authority granted by the Defendants to their counsel. (Doc. 37 at 14). Rule 56 of the Federal Rules of Civil Procedure states that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). As the parties have apparently not closed discovery, the Plaintiff has timely filed its motion, though a failure by the Plaintiff to substantially cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" undermines any assertion that material facts do not remain in dispute. Fed. R. Civ. P. 56(c)(1).

Fierst v. Cmwlth. Land Title Ins. Co., 451 A.2d 674, 677 (Pa. 1982)) (even where express authority is given by a principal, third parties "who deal[] with an agent must 'take notice of the nature and extent of the authority conferred'" and "are bound at their own peril to notice limitations upon the grant of authority").

Instead, the Court must turn to the Plaintiff's contentions that the Defendants' counsel had apparent authority to enter into a contract or settlement on the Defendants' behalf, or that defendant Price's failure to raise any concerns or object to legal conversations between the parties was equivalent to an endorsement of a contract on behalf of the other defendants.[4] (Doc. 40 at 5). Apparent authority may exist where a principal's conduct or assertions towards a third party create a reasonable inference that an agent has authority to act on the principal's behalf. Tiernan v. Devoe, 923 F.2d 1024, 1034 (3d Cir. 1991) (citing Restatement (Second) of Agency § 8 (1958)). In contrast, authority by estoppel occurs when the principal does not take reasonable steps to correct a third party's apparent belief that the principal's agent was authorized to act on the principal's behalf. Travers v. Reliant Senior Care Holdings, Inc., 228 A.3d 280, 288 (Pa. Super. Ct. 2020) (citing Wisler, 124 A.3d at 325); *see* Turnway Corp., 336 A.2d at 876

---

[4] As the Plaintiff contends, "the concepts of agency by estoppel and apparent authority are, in this case, closely intertwined." (Doc. 40 at 9). The Court therefore applies parallel analysis for the two forms of authority, both of which would concern representations by the Defendants to the Plaintiff regarding Defendants' counsel's authority.

(pursuant to Pennsylvania law, agency by estoppel is predicated on two elements: "(1) there must be negligence on the part of the principal in failing to correct the belief of the third party concerning the agent and (2) there must be justifiable reliance by the third party").

The Plaintiff argues that Defendants' counsel "repeatedly represented both the identities of his client on whose behalf he was acting as well as his authority and purpose for doing so." (Doc. 40 at 7). In support of these contentions, the Plaintiff again refers to the email chain between the parties in which defendant Ray Price, after a contentious exchange with the Plaintiff concerning the validity of the Plaintiff's lease on the Monroe Property, "forward[ed] [Plaintiff's] emails and attached leases to [his] attorney" and "directed Adams to deal with [the Defendants' attorney] on the issue." (Id. at 6-7) (citing (Doc. 30-3 at 24-27)). Within this email chain, the Defendants' counsel also asserts that as "counsel for RPM Realty Company and its manager/partner, Raymond Price III," he was to "help resolve all outstanding issues promptly concerning the billboard in Snydersville, Pennsylvania." (Doc. 40 at 7) (citing (Doc. 30-3 at 18-19)); *see also* (Doc. 30-3 at 6) (Defendants' counsel, in an email to Plaintiff's counsel, later states that "[t]his email confirmed our phone conference, and your company's agreement to resolve the pending billboard matters"). To the Plaintiff, these "manifestations" and the ongoing nature of the communications between the parties' counsels "led Adams to believe [Defendants' attorney] was authorized to resolve their dispute as Defendants' agent." (Doc. 40 at 6).

14

Likewise, once the alleged terms between the parties were seemingly enumerated within the email chain, the Plaintiff argues that defendant Price's "failure to repudiate the apparent agent's actions" estopped the Defendants from objecting to the terms. (Id. at 7-9).

This Court, however, recognizes that whether an agency relationship existed and if an agent maintained authority to act on the principal's behalf are questions of fact. McIlwain v. Saber Healthcare Grp., Inc., LLC, 208 A.3d 478, 485 (Pa. Super. Ct. 2019) (citing Walton 66 A.3d at 787). In this instance, it is more than plausible that a trier of fact could conclude, based on the communications between the parties, that the Plaintiff was unreasonable to infer that the Defendants' legal counsel maintained sufficient authority to enter into a contract on the Defendants' behalf without first needing to obtain approval. *See* UPMC v. CBIZ, Inc., 436 F.Supp.3d 822, 843 (W.D.Pa. 2020) (citing Bolus v. United Penn Bank, 525 A.2d 1215, 1221 (Pa. Super. Ct. 1987)) (denying summary judgment where questions of fact, such as whether an agent possessed apparent authority or agency by estoppel, existed). As a result, making a finding of fact in the alternative would be improper, and so the Court will therefore leave such a determination for a later time. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

As material disputes exist as to whether the Defendants' counsel retained the appropriate authority to enter into an agreement on the Defendants' behalf, the Plaintiff has failed to establish that the Defendants, through an authorized agent, expressed an intent to be bound by the terms within the parties' emails, and thus that a contract existed. Therefore, this Court need not yet determine whether the Plaintiff has demonstrated that the alleged agreement contained definite terms and sufficient consideration to be enforced, if there was a breach of the agreement, or if damages resulted from a breach. As a result, the Plaintiff's motion for summary judgment shall be denied.

## IV.    CONCLUSION

For the reasons discussed above, the Court will **DENY** the Plaintiff's motion for partial summary judgment, (Doc. 30), as to its claims for breach of settlement contract and anticipatory breach of contract. A separate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Date: March 10, 2022**
19-366-02.wpd